1  Lisel M. Ferguson (Bar No. 207637)
   E-mail:    lisel.ferguson@procopio.com
2  Tiffany Salayer (Bar No. 226189)
   E-mail:    tiffany.salayer@procopio.com
3  PROCOPIO, CORY, HARGREAVES &
       SAVITCH LLP
4  525 B Street, Suite 2200
   San Diego, CA  92101
5  Telephone:  619.238.1900
   Facsimile:   619.235.0398
6
   Attorneys for Defendants 2J ANTENNAS USA and
7  JAVIER RUBEN FLORES CUADRAS

8              UNITED STATES DISTRICT COURT

9         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10 TAOGLAS GROUP HOLDINGS              Case No. 18-CV-1277 LAB JMA
   LIMITED and TAOGLAS USA, INC.,
11                                     **MEMORANDUM OF POINTS AND**
            Plaintiffs,                **AUTHORITIES IN SUPPORT OF**
12                                     **DEFENDANTS' MOTION TO**
         v.                            **DISMISS PURSUANT TO FEDERAL**
13                                     **RULE OF CIVIL PROCEDURE**
   2J ANTENNAS USA, CORPORATION        **12(B)(6)**
14 and JAVIER RUBEN FLORES
   CUADRAS, an individual,             **[ORAL ARGUMENT REQUESTED]**
15
            Defendants.                Date:      September 17, 2018
16                                     Time:      11:15 a.m.
                                       Crtrm:     14A
17                                     Judge:     Hon. Larry Alan Burns

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION ............................................................................ 1

II.  BACKGROUND ............................................................................. 3

III. ARGUMENT .................................................................................. 4

    A.   Legal Standard .................................................................... 4

    B.   Plaintiffs Fail to Allege Facts Sufficient to Establish the Elements of its Trade Secret Claims under the DTSA and/or the CUTSA. ............ 5

        1.   The DTSA Does Not Apply in This Action Against Ruben and/or 2J. ................................................................ 5

        2.   Plaintiffs Fail to Describe its Alleged Trade Secrets with Sufficient Particularity to Separate it from Matters of Special Persons Skilled in the Trade, i.e. Ruben and/or 2J. .......... 7

        3.   Plaintiffs Fail to Adequately Allege that Ruben or 2J Misappropriated Taoglas' Trade Secrets. ........................................ 9

        4.   Plaintiffs Fail to Allege How Defendants' Actions Damaged Plaintiffs. ........................................................ 11

    C.   Breach of Written Contract ................................................ 11

    D.   Intentional Interference with Contract ................................... 14

IV.  PLAINTIFFS' CLAIMS FOR RELIEF SUFFER FROM A NUMBER OF LEGAL DEFICIENCIES THAT CANNOT BE CURED BY AMENDMENT. ......................................................................... 15

V.   CONCLUSION ............................................................................. 15

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3
FEDERAL CASES

4
*Adams Arms LLC v. Unified Weapon Sys., Inc.*
No. 8:16-cv-1503-T-33AEP, 2016 WL 5391394 ................................................... 6

5
*Ashcroft v. Iqbal*
6
556 U.S. 662 (2009) ............................................................... 4, 5, 11, 13

7
*Autodesk, Inc. v. ZWCAD Software Co., Ltd.*
No. 14-cv-1409, 2015 WL 2265479 (N.D. Cal. May 13, 2015) ........................ 5, 7

8
*Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*
9
No. 16-03737-JCS, 2017 WL 412524 (N.D. Cal. Jan. 31, 2017) ........................ 11

10
*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ................................................................... 4, 11

11
*Bladeroom Grp. Ltd. v. Facebook, Inc.*
12
No. 15-cv-1370, 2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) .......................... 7, 8

13
*Cahill v. Liberty Mut. Ins. Co.*
80 F.3d 336 (9th Cir. 1996) ................................................................ 5

14
*Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*
15
318 F.Supp.2d 216 (D.Del. 2004) ....................................................... 14

16
*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*
No. 15-02177-SI, 2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) ........................ 11

17
*Dazzle Software II, LLC v. Kinney*
18
No. 16-cv-12191, 2016 WL 6248906 (E.D. Mich. Sept. 22, 2016) ...................... 6

19
*DeSoto v. Yellow Freight Sys., Inc.*
957 F.2d 655 (9th Cir. 1992) ............................................................ 15

20
*Farhang v. Indian Inst. Of Tech., Kharagpur*
21
No, C-08-02658 RMW, 2010 WL 2228936 (N.D. Cal. June 1, 2010) ....... 8, 10, 13

22
*Gabriel Techs. Corp. v. Qualcomm Inc.*
No. 08cv1992-MMA(POR), 2009 WL 3326631, *11 (S.D. Cal.
23
Sept. 3, 2009) ...................................................................... 14, 15

24
*Gatan, Inc. v. Nion Co.*
No.15-01862-PJH. 2017 WL 1196819 (N.D. Cal. Mar. 31, 2017) ....................... 7

25
*Ileto v. Glock, Inc.*
26
349 F.3d 1191 (9th Cir. 2003) ............................................................ 5

27
*Landgraf v. USI Film Prods.*
511 U.S. 244 (1994) ...................................................................... 6

28

ii

*Lee v. Los Angeles*
250 F.3d 668 (9th Cir. 2001) ............................................................... 5

*Moss v. U.S. Secret Service*
572 F.3d 962 (9th Cir. 2009) ............................................................... 5

*Navarro v. Block*
250 F.3d 729 (9th Cir. 2001) ............................................................... 4

*Neitzke v. Williams*
490 U.S. 319 (1989) ............................................................................. 4

*Pellerin v. Honeywell Int'l, Inc.*
877 F. Supp. 2d 983 (S.D. Cal. 2012) ...................................... 7, 10, 13

*Rita Med. Sys., Inc. v. Resect Med., Inc.*
No. C 05-03291 WHA, 2007 WL 161049 (N.D. Cal. Jan. 17, 2007) .................. 11

*Robertson v. Dean Witter Reynolds, Inc.*
749 F.2d 530 (9th Cir. 1984) ............................................................... 4

*S. Cal. Inst. of Law v. TCS Educ. Sys.*
No. CV 10-8026 PSG, 2011 WL 1296602 (C.D. Cal. Apr. 5, 2011) .............. 9, 10

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*
806 F.2d 1393 (9th Cir. 1986) ............................................................. 15

*Sensible Foods, LLC v. World Gourmet, Inc.*
No. 11-2819 SC, 2011 WL 5244716 (N.D. Cal. Nov. 3, 2011) ............................ 13

*Thompson v. Davis*
295 F.3d 890 (9th Cir. 2002) ............................................................... 5

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*
587 F.3d 1339 (Fed. Cir. 2009) ........................................................... 8

*Veronica Foods Co. v. Ecklin,*
No. 16-CV-07223-JCS, 2017 WL 2806706 (N.D. Cal. June 29, 2017) ............................................................................................. 9

*W. Mining Council v. Watt*
643 F.2d 618 (9th Cir. 1981) ............................................................... 5

**STATE CASES**

*Diodes, Inc. v. Franzen*
260 Cal. App. 2d 244 (1968) ............................................................... 7

*FLIR Sys., Inc. v. Parrish*
174 Cal.App.4th 1270 (2009) ............................................................. 10

*Harris v. Rudin, Richman & Appel*
74 Cal.App.4th 299, 87 Cal.Rptr.2d 822 (1999) ................................... 12

iii

*Oasis West Realty, LLC v. Goldman*
   51 Cal.4th 811, 124 Cal.Rptr.3d 256, 250 P.3d 1115 (2011) ................................ 12

*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990)
   50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587] ......................................... 14

*Retirement Group v. Galante*
   176 Cal.App.4th 1226 (2009) ................................................................................ 13

*Sargent Fletcher, Inc. v. Able Corp.*
   110 Cal.App.4th 1658 (2003) ................................................................................ 11

*US Ecology, Inc. v. State of California*
   92 Cal.App.4th 113 (2001) .................................................................................... 12

**FEDERAL STATUTES, REGULATIONS, AND RULES**

18 U.S.C.
   § 1836 ............................................................................................................... 1, 11
   § 1839(5) .................................................................................................................. 5
   § 1839(5)(B) .......................................................................................................... 10

Federal Rule of Civil Procedure
   Rule 8 ....................................................................................................................... 7
   Rule 12(b)(6) ........................................................................................................ 4, 5

**STATE STATUTES, REGULATIONS, AND RULES**

California Civil Code
   § 3426 ....................................................................................................................... 1
   § 3426.1(b) ............................................................................................................... 5
   § 3426.1(b)(2)(B)(ii) ............................................................................................ 10

California Uniform Trade Secrets Act ........................................................................ 1

DOCS 124626-LIT001/3344306.8

Defendants 2J Antennas USA, Corporation ("2J") and Javier Ruben Flores Cuadras ("Ruben") (collectively referred to as "Defendants") respectfully submit this Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiffs Taoglas Group Holdings Limited and Taoglas USA, Inc.'s (collectively referred to as "Plaintiffs" or "Taoglas") Complaint (Dkt. 1) filed on June 14, 2018.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiffs state sufficient facts against each Defendant.

2.      Whether Plaintiffs state a claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836.

3.      Whether Plaintiffs state a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code § 3426, et seq.

4.      Whether Plaintiffs state a claim for Breach of Contract against Ruben, as an individual.

5.      Whether Plaintiffs state a claim for Intentional Interference with Contract against 2J.

## I.      INTRODUCTION

Plaintiffs are upset that one of its promising engineers went to work for a competitor, 2J.  Plaintiffs claim their former employee, Ruben, has used its trade secrets that he obtained while working at Taoglas.  Both Defendants deny without qualification that they engaged in any improper conduct with respect to Taoglas.  Neither Defendant misappropriated (or had any interest in misappropriating) Taoglas' trade secrets or used those purported trade secrets in the development of antennas for 2J or its customers.  Furthermore, Plaintiffs fail to allege that Ruben took any documents or information with him when he left Taoglas or that he somehow acquired information after he stopped working for Taoglas in October 2014.  Interestingly, Plaintiffs claim that Ruben was the named inventor on thirty-four of its patents but fails to allege any patent infringement.  The reason behind

1

1   Plaintiffs failure to sufficiently allege facts to support its claims and/or additional
2   claims is simple, they do not exist.

3          Ruben did not breach the alleged contract with Taoglas, and neither Ruben nor
4   2J acted improperly with respect to the alleged contract.  While Ruben was a good
5   employee and left Taoglas on good terms, he has not used any of Taoglas' trade
6   secrets or provided any of Taoglas' trade secrets to anyone else.   Ruben has
7   continued his education and career in the antenna market and together Ruben and 2J
8   are fierce competition.  Furthermore, the alleged contract is unenforceable due to a
9   lack of consideration, as it was requested and signed on exiting Taoglas, years after
10  Ruben started working there.  The evidence will show that Plaintiffs' claims against
11  both Defendants are wholly without merit and should never have been brought in the
12  first place.

13         The rivalry between Taoglas and 2J did not start with Ruben going to work for
14  2J.  It started several years prior, as Plaintiffs admit in its Complaint.  In addition to
15  the rivalry between the two companies, Plaintiffs have failed to allege a cognizable
16  legal theory and further failed to plead essential facts under any legal theory to state
17  a claim to relief that is plausible on its face.  The Complaint is replete with bare-
18  bones allegations and conclusory statements.   Plaintiffs allege that Defendants
19  misappropriated trade secrets, breached a contract, and interfered with that same
20  contract.  Plaintiffs' misappropriation of trade secrets claims cannot be sustained as
21  Plaintiffs cannot fulfill the basic pleading requirements of ownership or damages
22  sustained by Defendants' alleged use of the alleged trade secrets.   Moreover,
23  Plaintiffs themselves detail in the Complaint how they disclosed their otherwise
24  valuable information to Ruben years before seeking his agreement and signature to a
25  non-disclosure agreement.   The Intentional Interference with Contract claim is
26  wholly preempted by Plaintiffs' CUTSA claim and otherwise deficient.  Finally,
27  Plaintiffs have not alleged sufficient facts to support a claim of Intentional
28

2

Interference with Contract against 2J.  Accordingly, the Defendants request the Court dismiss with prejudice Plaintiffs' Complaint.

## II.  **BACKGROUND**

Taoglas and 2J have both been in the antenna business and had numerous connections over the years.  2J was founded in 2002 in Slovakia.  Taoglas was founded in Ireland in 2004.  While Taoglas was the first to open a United States subsidiary, both companies have been and remain competitors for the same projects and customers for many years.  (Complaint ¶ 24.)  Both companies attend and display their respective products at the same trade shows and conferences around the world.  (Complaint ¶ 24.)  The two companies both provide precertification testing.  (Complaint ¶ 24.)   Both companies were aware of each other and had communication years before Ruben began working at 2J.

Ruben worked with Taoglas as a consultant from 2008 and became a full time employee in or about 2012.  In 2011, Ruben worked for Taoglas' Mexican subsidiary and was paid by Taoglas Mexico.  In October 2014, after Ruben had given two months' notice that he would be leaving Taoglas to continue his education, Ruben was required to sign an "Employee Protective Covenants Agreement" (hereafter the "alleged Agreement").  (Complaint ¶ 21; Exhibit A.)  This was at least two years after Ruben had started working at Taoglas USA, Inc.  (Complaint ¶ 19.)  Ruben was not offered or given any consideration to sign the alleged Agreement.   (See Exhibit A on page 1 in the second paragraph and ¶1.)  Furthermore, Ruben's position had not recently changed in any respect other than he had given notice of his leaving the company to finish his education.  Contrary to Plaintiffs' claimed practices Ruben had access to Plaintiffs' alleged trade secrets and confidential information years before the alleged Agreement was even presented to him.  (Compare Complaint ¶ 17 and the line under the title of the document on Exhibit A.)

Plaintiffs filed its Complaint on June 14, 2018 alleging four causes of action: (1) violation of the DTSA, (2) violation of the CUTSA, breach of contract against

3

1 | Ruben as an individual and (3) intentional interference with contract against 2J.

2 | (Dkt. 1.)  Plaintiffs caused Defendant Ruben to be served in this case on or about

3 | June 18, 2018 for both 2J and himself.  (Dkt. 4-5)[1].  The parties met and conferred

4 | regarding this Motion on or about July 2, 2018, and stipulated to a two week

5 | extension for Defendants to respond to the Complaint.  (Dkt. 6.)  This Court granted

6 | the stipulated request to extend Defendant's time to respond to the Complaint until

7 | July 23, 2018.  (Dkt. 7.)

8 | **III.   ARGUMENT**

9 | **A.   Legal Standard**

10 | A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the

11 | sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

12 | Dismissal is warranted under Rule 12 (b)(6) where the complaint lacks a cognizable

13 | legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.

14 | 1984); see also *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6)

15 | authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

16 | Alternatively, a complaint may be dismissed where it presents a cognizable legal

17 | theory yet fails to plead essential facts under that theory.  *Robertson*, 749 F.2d at

18 | 534.  While a plaintiff need not give "detailed factual allegations," a plaintiff must

19 | plead sufficient facts that, if true, "raise a right to relief above the speculative level."

20 | *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  "To survive a motion to

21 | dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

22 | a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

23 | (2009) (quoting *Twombly*, 550 U.S. at 547).  A claim is facially plausible when the

24 | factual allegations permit "the court to draw the reasonable inference that the

25 | defendant is liable for the misconduct alleged."  *Id*.  In other words, "the non-

26 | conclusory 'factual content,' and reasonable inferences from that content, must be

27 |

28 | [1] While page one appears to indicate that Ruben was served as an individual on 08/18/2018 that date is clearly erroneous as it is in the future.  (Dkt. 5 at 4(a)(1).)

plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Lee v. Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

### B. Plaintiffs Fail to Allege Facts Sufficient to Establish the Elements of its Trade Secret Claims under the DTSA and/or the CUTSA.

"To state a claim for misappropriation of trade secrets under the [CUTSA], a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Autodesk, Inc. v. ZWCAD Software Co., Ltd.*, No. 14-cv-1409, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (citation omitted). The elements of misappropriation under the DTSA are similar to those under the CUTSA. Compare 18 U.S.C. § 1839(5), with Cal. Civ. Code § 3426.1(b).

#### 1. The DTSA Does Not Apply in This Action Against Ruben and/or 2J.

Plaintiffs' claim for misappropriation under the DTSA is deficient and must be

5

dismissed for the independent reason that the DTSA does not apply to Ruben and/or 2J's alleged conduct.   By its express terms, the DTSA only applies to acts of misappropriation that occurred on or after May 11, 2016, the date of the DTSA's enactment: "The amendments made by this section shall apply with respect to any misappropriation of a trade secret for which any act occurs on or after the date of the enactment of this Act."   Pub. L. No. 114-153, 130 Stat 376, 382; see also id. at 385 (stating that the date of enactment is May 11, 2016); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) ("[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.").   Therefore, to state a valid claim under DTSA, Plaintiffs must allege "a prohibited 'act' occurring after May 11, 2016."   *Adams Arms LLC v. Unified Weapon Sys., Inc.*, No. 8:16-cv-1503-T-33AEP, 2016 WL 5391394 at *6 (emphasis added); accord *Dazzle Software II, LLC v. Kinney*, No. 16-cv-12191, 2016 WL 6248906, at *1 (E.D. Mich. Sept. 22, 2016).

Plaintiffs have not satisfied—and cannot satisfy—this requirement.   In its Complaint, Taoglas does not allege any specific acts by either Defendant after May 11, 2016.   Rather, Plaintiffs allege that Ruben acquired its trade secret information while working at Taoglas from 2011-2014, and disclosed that information to 2J to open 2J's US location.   Specifically Plaintiffs allege that 2J hired Ruben "in the United States to set up and manage operations in the United States and began using the numerous and invaluable trade secrets that [Ruben] brought with him to copy Plaintiffs' products, utilize Plaintiffs' suppliers, and steal Plaintiffs' customers." (Complaint ¶ 1, 27-28, 30.)   While Plaintiffs include dates around the time of the enactment of DTSA or after, Plaintiff clearly states each time that the date is when Taoglas learned of the information, not the date the alleged misappropriation took place.   Plaintiffs clearly state it "has irrefutable evidence that 2J and [Ruben] began using Taoglas trade secrets not long after [Ruben] helped open the 2J US Office." (Complaint ¶ 30.)   Again per the Complaint Ruben left Taoglas in October 2014 and

6

began working for 2J "sometime between leaving Taoglas in October 2014 and September 1, 2015 …."  (Complaint ¶ 26)  If the Complaint is to be taken as true then any misappropriation would have occurred before the effective date of the DTSA.

## 2. Plaintiffs Fail to Describe its Alleged Trade Secrets with Sufficient Particularity to Separate it from Matters of Special Persons Skilled in the Trade, i.e. Ruben and/or 2J.

As to the first element, although "[a] plaintiff need not 'spell out the details of the trade secret,'" *Autodesk*, 2015 WL 2265479, at *5, the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)).  Here, the Complaint and Exhibit A (Dkt. 1-2) thereto merely provide a high-level overview of Plaintiffs' purported trade secrets, such as "Confidential Information" which Taoglas defines as business information that the company has not made public and is not readily available to persons outside the company through proper means.  (Exhibit A to Complaint, Dkt. 1-2 ¶ 3.)  These allegations do not satisfy the Rule 8 pleading requirements, as they do not even give the Court or Defendants notice of the boundaries of this case – enough to permit Defendants to prepare a defense and for the court to craft limit on discovery.  See *Gatan, Inc. v. Nion Co.*, No.15-01862-PJH. 2017 WL 1196819, at *6 (N.D. Cal. Mar. 31, 2017).  Moreover, Plaintiffs have not made clear which aspects of its technology and other information are "part of patents and pending patent applications," if any, and which are secret.  *Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 15-cv-1370, 2015 WL 8028294, at *4 (N.D. Cal. Dec. 7, 2015).  For instance, Plaintiffs website at Taoglas.com states "patent pending" for both its PA.710.A and PA.711.A products on their respective datasheets.  (See Exhibits 4-5.)

7

Plaintiffs failure to identify and describe its alleged trade secrets with particularity is especially problematic, as the broad categories of information that Plaintiffs claim as trade secrets overlap with the public subject matter found and available on its website at Taoglas.com.  For instance the Taoglas.com website has had information regarding the MA240 available on its website since December 18, 2014, including a detailed datasheet.  (See Exhibit 3.)  This issue is further confused by Plaintiffs claims that it "has a large international patent portfolio, having filed more than 250 patent applications, including over 45 issued patents."  (Complaint ¶ 15.)  Ruben was named inventor on more than 34 patent applications assigned to and filed by Taoglas, including over 12 issued patents.  (Complaint ¶ 19.)  Furthermore, as stated above, Taoglas products PA.710.A and PA.711.A state "patent pending" on their respective datasheets.  (Exhibits 4-5.)  See *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) ("[I]t is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain.  Once the information is the public domain and the element of secrecy is gone, the trade secret is extinguished ….").  Plaintiffs must provide factual allegations sufficient to put Defendants and this Court on notice of "where the boundary between [its trade] secrets" and the information set forth in the public domain lies.  *Farhang v. Indian Inst. Of Tech., Kharagpur*, No, C-08-02658 RMW, 2010 WL 2228936, at 814 (N.D. Cal. June 1, 2010) (dismissing claim where complaint was too "vague" to put defendant on notice as to what was a trade secret and what was covered by plaintiff's copyright or other public documents); see *Bladeroom*, 2015 WL 8028294, at 84 (dismissing claim where complaint failed to make clear which aspects of plaintiff's technology were "part of patents and pending patent applications" and which were secret).

The Complaint must also allege that the trade secret owner "has taken reasonable measures to keep such information secret," and that the "information derives independent economic value, actual or potential, from not being generally

8

known" or "ascertainable through proper means." *Veronica Foods Co. v. Ecklin*, No. 16-CV-07223-JCS, 2017 WL 2806706, at 814 (N.D. Cal. June 29, 2017). Here, while Plaintiffs conclusory state it has taken stringent measures to preserve the secrecy of its trade secrets by restricting access, using encryption, requiring passwords and dual-authentication for access, and requiring employees, contractors, consultants, vendors, customers, and manufactures to sign confidentiality agreements. (Complaint ¶ 16-17.) Plaintiffs contradict its stated policy by clearly stating Ruben "was directly [] involved in virtually every product that Taoglas developed, marketed, and/or sold in the US between 2011 and 2014." (Complaint ¶ 19.) Plaintiffs further allege that by "October 2014, when [Ruben] left Taoglas, almost no one else at Taoglas knew and understood Taoglas confidential technical and engineering information …." (Complaint ¶ 20.) Immediately following the alleged information Ruben had, Plaintiffs state in October 2014, prior to his exit, Ruben executed the alleged Agreement. (Complaint ¶ 21.) In light of these allegations it is clear that in 2011 when Ruben started to work full time on the alleged trade secrets there were really no measures in place to maintain their secrecy. It was not until three years after the alleged trade secrets were developed, and just before Taoglas key employee's departure, that Taoglas decided to have its key employee sign a confidentiality agreement.

### 3. Plaintiffs Fail to Adequately Allege that Ruben or 2J Misappropriated Taoglas' Trade Secrets.

To maintain a claim for misappropriation, a plaintiff may not allege "[m]ere possession of trade secrets." *S. Cal. Inst. of Law v. TCS Educ. Sys.*, No. CV 10-8026 PSG (AJWx), 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011) (quoting *FLIR Sys., Inc. v. Parrish*, 174 Cal.App.4[th] 1270, 1279 (2009)). Rather, a plaintiff must plead facts from which the court can plausibly infer that the defendants misused that information. *Id.*; see also *Pellerin*, 877 F. Supp. 2d at 989 (plaintiff must allege facts to support legal conclusion that defendant misused plaintiff's trade secrets); Cal. Civ.

9

Code § 3426.1(b)(2)(B)(ii) (defining use-based "misappropriation" as use that occurred "without express or implied consent by a person who . . . knew or had reason to know that his or her knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to . . . limit its use"); 18 U.S.C. § 1839(5)(B). Consequently, in cases where a defendant received the alleged trade secrets under an agreement with the plaintiff, the plaintiff must plead facts showing that defendant had a duty not to use the information in the way alleged.  In *Southern California Institute of Law*, for example, the Court dismissed the plaintiff's trade secret claim because the parties' "Non-Disclosure Agreement provides the approved uses of [plaintiff's] information and the Complaint alleges no facts that suggest anything other than Agreement-compliant use."  2011 WL 1296602, at *8.  Likewise, in *Farhang*, the Court dismissed plaintiff Farhang's trade secret claim because the complaint failed to allege facts suggesting that defendant's use of the alleged trade secrets was "outside the scope of what it was permitted to do under" the parties' agreements.  2010 WL 2228936, at *6-7, 14-15.

Here, even if Taoglas had adequately identified its alleged trade secrets (or manages to do so in the future), Taoglas fails to allege any facts to support the conclusion that Ruben or 2J misappropriated those trade secrets.  While Plaintiff has concluded in its Complaint that Ruben obtained Taoglas' trade secrets during his employment, Plaintiffs further conclude without explanation of the who, what, when, where, and how that Ruben and 2J misappropriated Taoglas' secrets.  Plaintiffs fail to allege how 2J obtained Taoglas' trade secrets and what those secrets were.  Furthermore, Plaintiffs fail to allege how 2J misappropriated Taoglas' trade secrets.  Taoglas' complaint is devoid of factual allegations from which the Court can determine whether these conclusory claims regarding 2J's use of Taoglas' information cross the line from possible to plausible. See *Twombly*, 550 U.S. at 546; see also *Iqbal*, 556 U.S. at 679 (conclusions "must be supported by factual allegations").  For example, Taoglas offers no facts from which the Court could

10

plausibly conclude that 2J and/or Ruben did not independently develop the antennas mentioned or derive them from public sources.[2]  See *Rita Med. Sys., Inc. v. Resect Med., Inc.*, No. C 05-03291 WHA, 2007 WL 161049, at *8 (N.D. Cal. Jan. 17, 2007) ("Plaintiff has the burden of establishing that defendants did not independently derive trade-secret information."  (citing *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal.App.4th 1658, 1669 (2003)).

### 4.   Plaintiffs Fail to Allege How Defendants' Actions Damaged Plaintiffs.

The third element requires Plaintiff to allege facts sufficient to show that the Defendants' alleged actions damaged the Plaintiffs.  Plaintiffs fail to allege facts sufficient to support its claims of damages.

Lastly, Plaintiffs have failed to allege any act of misappropriation after May 11, 2016, the date the DTSA was enacted, in support of the DTSA cause of action. See 18 U.S.C. § 1836.  Even assuming that the Complaint has alleged "continuing use," this is insufficient.  E.g., *Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, No. 16-03737-JCS, 2017 WL 412524, at *9 (N.D. Cal. Jan. 31, 2017) (finding no "authority suggesting that the DTSA allows a misappropriation claim to be asserted based on the continued use of information that was disclosed prior to the effective date of the statute"); *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-02177-SI, 2017 WL 1436044, at *5 (N.D. Cal. Apr. 24, 2017) (finding that "without facts about when post-enactment use occurred and whether the information disclosed was new or somehow different from the prior misappropriation, plaintiff has failed to state a claim under the DTSA").

### C.   Breach of Written Contract

To state a claim for breach of a written contact, plaintiffs must plead facts that

---

[2] As indicated above Taoglas has numerous patents and Ruben was the inventor for a significant number of patents that were assigned to Taoglas (Complaint ¶ 15 and 19) and Taoglas has published information related to its products since December 2014 on its website (see Exhibits 1-5).

establish (1) the existence of a contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach and (4) resulting damages to the plaintiff. *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821, 124 Cal.Rptr.3d 256, 250 P.3d 1115 (2011). "If the action is based on alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference." *Harris v. Rudin, Richman & Appel*, 74 Cal.App.4th 299, 307, 87 Cal.Rptr.2d 822 (1999). While Plaintiffs have attached a document, refer to the document as a "Confidentiality Agreement," and claim it is a valid and enforceable contract (Complaint ¶ 60), a review of Exhibit A shows otherwise.

Despite these pleading requirements, Plaintiffs fail to allege facts sufficient to support the existence of a contract between Taoglas and Ruben. While Plaintiffs attach a signed document as Exhibit A to the Complaint and claim it is a valid and enforceable contract, Plaintiffs have failed to allege the basic elements of a contract. For instance, the alleged Agreement lacks consideration. "A promise is not enforceable unless consideration was given in exchange for the promise." *US Ecology, Inc. v. State of California*, 92 Cal.App.4th 113, 128-129 (2001). According to Exhibit A (Dkt. 1-2), Ruben was an at-will employee while employed at Taoglas. (Dkt. 1-2 ¶ 1.) Taoglas did not provide Ruben with any benefit by providing continued, at-will employment; due to the nature of at-will employment, the employer could terminate the employee at any time and for any reason both before and after the employee executed the agreement.

Additionally, the Complaint makes it clear that Ruben did not sign the alleged Agreement at the time he was hired. (Compare Complaint ¶ 18 and 21.) Instead and contrary to Plaintiffs' stated policy, Ruben signed the alleged Agreement on October 2, 2014 the same month he left Taoglas. (Compare the last page of Exhibit A and Complaint ¶ 21.) Furthermore, the alleged Agreement states under its title "(California New Hires and Incumbents)," and "[t]his agreement is made as a

12

condition of Employee's employment or continued employment with the Company." (Dkt. 1-2, page 1.)

Just as Plaintiffs do not adequately plead misappropriation, Plaintiffs do not offer any factual allegations about what information Ruben used, how Ruben used that information, or how that purported use violated the alleged Agreement. In particular, Plaintiffs' Complaint contains no facts indicating whether Ruben used any confidential information within two years of its disclosure or used any information that was not retained in its former employees' unaided memory. Absent any such facts, Plaintiffs' allegations "do not permit the court to infer more than the mere possibility" of Defendant's misconduct. *Iqbal*, 556 U.S. at 679. The Court therefore should dismiss Plaintiffs' claim for breach of contract. See *Pellerin*, 877 F. Supp. 2d at 990-91 (explaining that "Honeywell has not pled facts to establish a breach of the Employment Agreement or NDA, because it has not pled facts to establish misappropriation"); *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819 SC, 2011 WL 5244716 (N.D. Cal. Nov. 3, 2011); *Farhang*, 2010 WL 2228936, at *6-7 (dismissing claim for breach of NDA because complaint "does not contain facts suggesting that [defendant's] development of applications was outside the scope of what it was permitted to do under the joint venture agreement."). This is especially troublesome in this case, where Ruben was the inventor for Taoglas and has specialized knowledge of antennas and went to work for 2J who also has specialized knowledge of antennas. Simply stated the alleged Agreement did not prohibit Ruben from using his own knowledge of antennas after leaving Taoglas. See *Retirement Group v. Galante*, 176 Cal.App.4th 1226, 1237 (2009) ("While it has been legally recognized that a former employee may use general knowledge, skill, and experience acquired in his or her former employment in competition with a former employer, the former employee may not use confidential information or trade secrets in doing so.)

### D.     Intentional Interference with Contract

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587], internal citations omitted. According to the Complaint, Plaintiffs informed 2J of the alleged contract with Ruben on October 6, 2016.  (Complaint ¶ 32.)  Plaintiffs have not alleged any other information to support that 2J had knowledge of the alleged Agreement. Furthermore, Plaintiffs alleged, the Agreement continued for two years after the end of Ruben's employment (Complaint ¶ 23), which means the alleged Agreement had expired by the time 2J received notice of the alleged Agreement from Taoglas.  (See Complaint ¶ 21 stating "In October 2014, Cuadras left Taoglas ….")  For the reasons stated in section C. above, Plaintiffs have not shown that there is a valid contract between Taoglas and Ruben.

Furthermore, Plaintiffs' cause of action for Intentional Interference with Contract is preempted by Plaintiffs' second cause of action under the CUTSA. Courts applying California law have found that claims, like the ones here, "based entirely on the same factual allegations that form the basis of [the] trade secrets claims" are preempted.  *Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*, 318 F.Supp.2d 216, 220 (D.Del. 2004) (applying California law); see also *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08cv1992-MMA(POR), 2009 WL 3326631, *11 (S.D. Cal. Sept. 3, 2009) ("California courts have adopted a broad view of preemption in this area and have held that common law claims that are based on the same nucleus of facts as a misappropriation claim are preempted.").  Here Plaintiffs lay out the facts for the entire Complaint before its causes of action, and then further

14

incorporates those allegations in the first line of the specific cause of action. Specifically, Plaintiffs fourth cause of action for intentional interference with contract incorporates the allegations to the entire complaint including its cause of action under the CUTSA. (See Complaint ¶ 64.) Plaintiffs fail to allege any material distinction between the wrongdoing under its CUTSA claim and that alleged in its intentional interference with contract claim, therefore the CUTSA preempts the intentional interference with contract claim. *Gabriel Techs. Corp.*, 2009 WL 3326631 at *11.

## IV. PLAINTIFFS' CLAIMS FOR RELIEF SUFFER FROM A NUMBER OF LEGAL DEFICIENCIES THAT CANNOT BE CURED BY AMENDMENT.

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See *Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

Plaintiffs' claims for relief suffer from a number of legal deficiencies that cannot be cured by amendment. Because leave to amend would be futile, Defendants' request the Court dismisses with prejudice Plaintiffs' (1) violation of the DTSA, (2) violation of the CUTSA, (3) breach of contract against Ruben, as an individual, and (4) intentional interference with contract against 2J.

## V. CONCLUSION

Plaintiffs failed to plead facts sufficient to establish claims for misappropriation of trade secrets under the DTSA or the CUTSA, breach of contract, or intentional interference with contract. Furthermore the alleged contract between Ruben and Taoglas is unenforceable. Moreover, their claims for intentional interference with contract are wholly preempted by the CUTSA. As Plaintiffs cannot

15

plead any facts that would remedy their insufficient pleading, the court should dismiss Plaintiffs' Complaint in its entirety.


DATED:  July 23, 2018                    PROCOPIO, CORY, HARGREAVES &
                                         SAVITCH LLP


                                  By:  /s/ Tiffany L. Salayer
                                       Lisel M. Ferguson
                                       Tiffany Salayer
                                       Attorneys for Defendants
                                       2J ANTENNAS USA and JAVIER
                                       RUBEN FLORES CUADRAS

16

DOCS 124626-LIT001/3344306.8